UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LYNN SORENSON,<br><br>      Plaintiff,<br><br>   v.<br><br>CITY OF CALDWELL, a political subdivision of the State of Idaho, CITY OF CALDWELL DEPARTMENT OF PARKS AND RECREATION,<br><br>      Defendant. | Case No. 1:14-cv-00221-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Defendant City of Caldwell's (Caldwell) Motion for Summary Judgment (Dkt. 22). The Court has reviewed the briefs submitted by the parties and, after a hearing on this matter conducted on July 20, 2015, enters the following Order granting Caldwell's motion.

## BACKGROUND

Plaintiff Lynn Sorenson sued Caldwell claiming that he was constructively discharged due to an age-based hostile work environment and that he was retaliated against by Caldwell, all in violation of the Federal Age Discrimination in Employment Act ("ADEA") and the Idaho Human Rights Act ("IHRA"). *Am. Compl.* ¶¶ 23-36. Caldwell seeks summary judgment on Sorenson's claims.

MEMORANDUM DECISION AND ORDER - 1

Sorenson was hired to work for Caldwell's Parks Department in April 2008. *Def. Statement of Facts* ¶ 1, Dkt. 22-2. Sorenson's direct supervisor was Vinton Howell, who reported to ElJay Waite, the City Finance Director and Treasurer, who reported to Mayor Garret Nancolas. *Id.* Sorenson's work would often take him to the Purple Sage and Fairview golf courses, where Ken Wheeler worked as the Golf Superintendent. *Id.* ¶ 2. Wheeler would often use inappropriate age-related language and profanities with Sorenson. *Am. Compl.* ¶ 10. Sorenson alleges that this problem was not adequately addressed despite multiple complaints to city officials. *Id.* ¶¶ 10-13.

In August 2011, Caldwell merged the Parks Department, city golf courses, and cemetery to become the Land and Facilities Department. *Def. Statement of Facts* ¶ 2, Dkt. 22-2. As part of this merger, Wheeler was promoted to the newly created position of Land and Facilities Superintendent, overseeing all three parts of the new department. *Id.* Under the new structure, the Parks employees, including Sorenson, were supervised by Howell, who reported to Wheeler. *Id.* ¶¶ 1-2.

On February 27, 2012, Monica Jones, Caldwell's Human Resources Director, had a series of meetings with Sorenson and other Parks employees. *Id.* ¶ 4. During the course of those meetings, Jones received information that Wheeler was making age-related comments to Sorenson as well as profane comments to other employees. *Id.* Subsequently, Wheeler was instructed to not enter the Park's building, to not directly contact Parks employees, and to not make age-related comments to Sorenson. *Pl.'s Statement of Facts*, ¶¶ 8-9, Dkt. 25-1. Determined to resolve the conflict, Sorenson

encouraged the other Parks employees to work together with Wheeler. *Id.* ¶ 12. In violation of his superior's orders, Wheeler entered the Parks building on March 20, 2012, made derogatory age-related remarks to Sorenson, and physically assaulted another Parks employee who was under the age of 40. *Id.*

Although Sorenson attempted to contact Howell by phone that same day, he did not tell Howell about the March 20th incident until March 21st. *Id.* ¶ 13. The following day, Sorenson met with Jones and Waite to discuss the encounter. *Id.* ¶ 14. After the meeting, Waite ordered Wheeler to not have any contact with Sorenson. *Def. Statement of Facts* ¶ 9, Dkt. 22-2. Wheeler appears to have complied since that time. *Id.*

Jones commenced an investigation into the incident on April 2, 2012 and placed Wheeler on administrative leave. *Id.* ¶ 10. After the investigation was concluded, Wheeler was suspended for three days without pay, placed on six-month probation, and ordered to attend training. *Id.* ¶ 14. In addition, Caldwell essentially disbanded the Land and Facilities Department and put Wheeler back in his prior position as Golf Superintendent of the Golf Department. *Id.*

Jones and Waite met with Sorenson on April 16, 2012 to discuss the investigation. *Pl.'s Statement of Facts*, ¶ 16, Dkt. 25-1. Sorenson asked Jones and Waite to disclose the disciplinary actions taken against Wheeler but they refused, citing Caldwell's policy to keep all disciplinary actions confidential. *Def.'s Audio Recording*, Track 4, 5:13 – 5:30, Dkt. 22-14. However, Waite continually stated that appropriate action had been taken against Wheeler and that Sorenson was protected and did not need to worry about

MEMORANDUM DECISION AND ORDER - 3

Wheeler anymore. *Id*. at 1:06:25 – 1:06:35. During that same meeting, Jones expressed her frustration that Sorenson did not follow Caldwell's policy in reporting the harassment, and threatened Sorenson that she could "fire him right now." *Pl.'s Statement of Facts*, ¶ 16, Dkt. 25-1.

On April 20, 2012, Sorenson met with Howell and resigned. *Def. Statement of Facts* ¶ 19, Dkt. 22-2. Sorenson stated that he was not comfortable working at the Parks Department anymore even though Wheeler was now separated from the Parks Department. *Def.'s Audio Recording*, Track 3, 25:25 – 25:50, Dkt. 22-14. Sorenson did not believe it was possible to avoid contact with Wheeler and that Wheeler would inevitably lash out against him again. *Id*. at 28:05 – 28:52.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch.*

*Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

Both of Sorenson's claims are brought under the ADEA and the IHRA. Because federal law guides the interpretation of the IHRA, the Court's analysis is the same under both statutes. *Hatheway v. Bd. of Regents of Univ. of Idaho*, 310 P.3d 315, 322 (Idaho 2013). Sorenson's claims are based on circumstantial evidence of age-based discrimination. Therefore, the Court evaluates the claims by using the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). Under this framework, Sorenson must first establish a prima facie case under the ADEA. *Id*.

In order to establish a prima facie case of age discrimination, Sorenson must prove, among other elements, that he was discharged by Caldwell. *See Diaz*, 521 F.3d at 1207. Sorenson admits that he resigned and, therefore, relies on the theory of constructive discharge. In order to establish a prima facie case of retaliation, Sorenson must prove, among other elements, that he suffered an adverse employment action. *See University of Texas Southwestern Medical Center v. Nassar*, __ U.S. __, __, 133 S.Ct. 2517, 2534 (2013). Sorenson alleges that he suffered an adverse employment action because he was constructively discharged. Therefore, if Sorenson was not constructively discharged, both of his claims fail as a matter of law.

Whether the circumstances of employment amount to a constructive discharge is an objective inquiry: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). (Internal citation and quotation omitted). There is a high bar for a claim of constructive discharge because "federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Id*. Sorenson cannot clear this high bar.

The record shows that a reasonable person in Sorenson's position would not have felt compelled to resign because of age-based discrimination. In *Montero v. AGCO Corp.*, the Ninth Circuit held that there is no constructive discharge when the harassing behavior has not occurred for a significant period of time and the employee is aware that the employer has taken significant steps to prevent further harassment. *Montero v. AGCO Corp.*, 192 F.3d 856, 861 (9th Cir. 1999). The facts of this case fit squarely within that mold.

First, Sorenson's resignation came a month after the harassing behavior stopped. Second, even though Sorenson was not told the particulars of the disciplinary action taken, he was made aware that Wheeler had been disciplined, that Wheeler was no longer in charge of the Parks Department where Sorenson worked, and that Sorenson would be in a safe work environment. Dkt. 22-14. From that point, Wheeler had no contact with

Sorenson. A reasonable person in Sorenson's position would not have considered these intolerable circumstances warranting resignation. Therefore, Sorenson cannot prove constructive discharge. In turn, summary judgment must be granted on Sorenson's claims.

Additionally, Sorenson takes issue with Jones' statement that she could fire him for not following proper protocol in reporting the alleged age-discrimination. Even assuming the statement was a threat, as suggested by Sorenson, such a threat would not compel a reasonable person to resign. *Pl.'s Statement of Facts*, ¶ 16, Dkt. 25-1. Resigning in the face of a threat of termination would only accomplish the feat of beating the employer to the punch. Sorenson cannot cogently argue that the threat was so overbearing that he felt compelled to carry out the object of the threat. Therefore, summary judgment must be granted because the alleged retaliatory actions were insufficient to compel a reasonable person to resign.

## ORDER

**IT IS ORDERED** that Caldwell's Motion for Summary Judgment (Dkt. 22) is **GRANTED**.

DATED: August 13, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court